**PHILADELPHIA WELFARE RIGHTS ORGANIZATION, by Louise Brookins, Executive Director and Trustee Ad Litem**

**and**

**Philadelphia Citizens in Action, by Roxanne Jones, Chairperson and Trustee Ad Litem, on behalf of their members and the class they seek to represent**

**v.**

**Helen O'BANNON, Secretary Department of Public Welfare, John Cuddy, Acting Deputy Secretary for Income Maintenance, Donald Dougherty, Deputy in Charge of Philadelphia County, Don Jose Stovall, Executive Director, Philadelphia County Board of Assistance.**

**Civ. A. No. 81–4369.**

United States District Court,
E. D. Pennsylvania.

Oct. 27, 1981.

---

Lawrence M. Schall, Debra Harris and Richard Weishaupt, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Stanley Slipakoff and Jean Graybill, Dept. of Public Welfare, Philadelphia, Pa., for defendants.

## OPINION [1]

JOSEPH S. LORD, III, Chief Judge.

### I. Factual Background

Earlier this year, Congress amended the Food Stamp Act, 7 U.S.C. §§ 2011–2027, in two respects by enacting the Omnibus Budget Reconciliation Act of 1981, Pub.L. No.97–35, 95 Stat. 357 (1981). First, the standard deduction for a household's earned income work expenses was reduced from

---

1. This opinion is an edited version of the emergency bench opinion delivered October 27, 1981.

twenty percent to eighteen percent. Second, the Omnibus Act converted the eligibility test for food stamps from a 100% of the poverty line net income test to a 130% of the poverty line gross income test.

Pennsylvania intends to implement these changes effective November 1, 1981. A general notice will be sent to all 450,000 food stamp recipients in the Commonwealth reading as follows:

> Due to changes in Food Stamp Program regulations, your Food Coupon Authorization may show a change in "Coupons That You Will Get."

> If you disagree with discontinuance of your benefits or the change in the amount of your coupons, you have the right to request a Fair Hearing. Contact your County Assistance Office worker for help in requesting a fair hearing.[2]

The record shows that these changes will affect 50,000 Pennsylvania households currently receiving food stamps based on data in the Commonwealth's computer data base. As a result, approximately 4,000 households now receiving food stamps will be cut off entirely, suffering an average loss of $24.60 per month. The range of benefit loss, however, is from $2 or $3 to $156 per month, depending on family size. Forty thousand additional households face reductions of an average of two to three dollars of benefits each month.[3]

Plaintiffs brought this action seeking declaratory and injunctive relief prohibiting the Commonwealth from implementing these reductions or terminations in food stamp benefits without providing timely and adequate notice to the affected house-

holds. At plaintiffs' request, I ordered the parties to appear before this court for a hearing on plaintiffs' request for a temporary restraining order and/or a preliminary injunction. I have elected to treat plaintiffs' application as a motion for a preliminary injunction and, pursuant to Federal Rule of Civil Procedure 65(a)(2), I order consolidation of the hearing on this motion with the trial of the action on the merits and treat the motion as one for a permanent injunction.[4]

For the reasons fully discussed in the remainder of this opinion, I find for plaintiffs, and enjoin defendants, their officers, agents, employees, and servants from reducing and/or terminating plaintiffs' food stamp benefits without constitutionally adequate notice.

## II. Applicable Law

### A. Standards for Granting a Permanent Injunction

■ A district court deciding whether a permanent injunction should be issued must undertake a three stage inquiry. First, the court must decide whether plaintiffs have actually succeeded on the merits of their claim. Second, the court must decide whether the "balance of equities" favors the granting of injunctive relief. Finally, the court needs to decide what form the injunctive remedy should take. *See, e. g., Sierra Club v. Alexander*, 484 F.Supp. 455, 471 (N.D.N.Y.), *aff'd*, 633 F.2d 206 (2d Cir. 1980); *Minnesota Public Interest Research Group v. Butz*, 358 F.Supp. 584 (D.Minn. 1973), *aff'd*, 498 F.2d 1314 (8th Cir. 1974). Particularly when "balancing the equities,"

---

**2.** Approximately 400,000 recipients of food stamps will not be affected by the changes, although they will receive the notice. Further confusing matters, recipients of food stamps in Philadelphia and Allegheny Counties will receive their Authorizations to Purchase separately from their notices.

**3.** The record does not show what the maximum or minimum deprivations are for these households, but it appears from the evidence concerning the range of deprivation for the 4,000 households that in some instances it may be considerably more than two or three dollars.

**4.** Rule 65(a)(2) provides: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." The Commonwealth's objections to this procedure, based on plaintiffs' failure to join the federal government, are not binding on the court, *see* 7 J. Moore, Moore's Federal Practice ¶ 65.04[4], at 65–65 to 65–67 (1980), especially in light of my holding that I need not strike down the federal regulations to reach my ultimate result.

the trial judge should exercise his discretion in determining the propriety of injunctive relief. Among the factors traditionally considered in this balance are: the adequacy of another remedy; the benefit to the plaintiff if injunctive relief is granted and hardship if such relief is denied; the hardship on the defendant if injunctive relief is granted; the hardship on third parties; the convenience and effectiveness of administration; and the public and social consequences of either granting or denying injunctive relief. *See* J. Moore, 7 Moore's Federal Practice, ¶ 65.18[3], at 65–136 to 65–140.1 (1980).

## B. Substantive Evaluation

Initially, I note that, under the legal standards of this procedural due process case, the first two inquiries in my decision whether to issue a permanent injunction involve precisely the same judgments. Thus, the determination whether a plaintiff asserting fourteenth amendment procedural due process claims has prevailed on the merits requires a balancing of the equities under the substantive rules laid down for these claims by the Supreme Court. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). My conclusion that plaintiffs have prevailed on the merits of their claim, therefore, also represents a conclusion that the balancing of the equities requires issuance of a permanent injunction.

■ Analysis of plaintiffs' procedural due process claims necessitates two distinct stages of analysis. First, it is necessary to determine whether plaintiffs have been deprived of a property interest entitled to fourteenth amendment protection. It is now a completely settled proposition of law that entitlement to food stamp benefits is a property interest subject to full protection under the fourteenth amendment due process clause. *E. g., Banks v. Trainor,* 525 F.2d 837 (7th Cir. 1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Tindall v. Hardin,* 337 F.Supp. 563 (W.D.Pa. 1972), *aff'd sub nom., Carter v. Butz,* 479 F.2d 1084 (3d Cir. 1973), *cert. denied,* 414

U.S. 1094, 1103, 94 S.Ct. 727, 737, 38 L.Ed.2d 552, 559 (1973).

■ Once a constitutionally protected property interest has been identified, the relevant issue becomes what process is due. The Supreme Court stated in *Goldberg* that fundamental principles of due process

> require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.

397 U.S. at 267–68, 90 S.Ct. at 1020. Six years later, in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court set forth three factors that should be considered by any court determining what administrative procedures are constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.,* 424 U.S. at 334–35, 96 S.Ct. at 903.

## 1. The Private Interest

The private interest at stake in this case is extremely significant. Food is a necessity of life. The food stamp program considers the recipient's income, allowable deductions, and the household composition to calculate the precise amount of benefits a household needs in order to purchase a minimally adequate supply of food. Accurate calculations therefore enable persons on the "margin of subsistence," *Mathews,* 424 U.S. at 340, 96 S.Ct. at 905, to obtain a minimally

adequate diet. By definition, a miscalculation involving any one of these factors can result in a household receiving fewer food stamps than has been determined to be minimally adequate. As the district court stated in *Willis v. Lascaris*, 499 F.Supp. 749, 756 (N.D.N.Y.1980):

> [T]here can be no doubt that even the slightest change in a household's food stamp allotment threatens the well-being and the dignity of its members. *See Goldberg v. Kelly*, 397 U.S. at 266, 90 S.Ct. at 1019; *Lyons v. Weinberger*, 376 F.Supp. 248, 262–63 (S.D.N.Y.1974). A household's interest in its own survival, at the same time, is not an isolated concern, but is an important concern of our society as a whole. "[P]ublic assistance ... is not mere charity, but a means 'to promote the general welfare, and secure the Blessings of Liberty to ourselves and our Posterity.'" *Goldberg v. Kelly*, 397 U.S. at 265, 90 S.Ct. at 1019.

The record persuasively demonstrates that the abstract statements of private interest quoted above apply full force to the facts of this case. First, 4,000 households that heretofore have been receiving food stamp benefits will be terminated under Pennsylvania's implementation of the Omnibus Budget Reconciliation Act. These households stand to lose anywhere from $2 or $3 to $156 per month in food stamp benefits, an average of $24.60 per month. Forty thousand additional households will lose an average of two or three dollars a month in food stamp benefits under the new program. Although the range of benefit loss for these families is not disclosed in the record, "[e]ven a slight change in food stamp allotments effects [*sic*] a public assistance household's ability to procure the necessities of life." *Willis*, 499 F.Supp. at 759. Further, if a computation error is made by the computer, or if the data base

on which the computer's calculations must necessarily rely is in some way inaccurate, the payment of supplemental benefits cannot be achieved through normal computer operations. The testimony showed that such benefits might possibly be issued manually, but such a process would appear to be a lengthy, time consuming affair, during which recipients of food stamps would be forced to exist at a subpoverty level.

### 2. Risk of Erroneous Deprivation

Not only do I hold that an erroneous deprivation is likely to harbor severe consequences for Pennsylvania food stamp recipients, but I also hold that the risk of such an erroneous deprivation is extremely high in the food stamp context. Courts have consistently required detailed advance notice of food stamp terminations and/or reductions "[b]ecause the calculation of food stamp benefits under the income method requires an individualized determination of income, expenses and deductions for each recipient" thereby creating substantial risks of erroneous deprivations. *Banks*, 525 F.2d at 842; *Willis*, 499 F.Supp. at 757.

Again, the particularized facts of this case provide a concrete illustration of the abstract principles of law applied by other courts. For example, the record shows that under current law food stamp recipients need not report reductions in earnings of $25 or less each month. With the transition to the new eligibility test formula, however, some households might find themselves cut off from food stamp benefits simply because they have failed to report such a reduction in income, even though they were not required to do so. Further, any number of reporting, keypunching, or computational errors in relation to either the eligibility test or to the exceptions under the new statute[5] are likely to occur given the com-

---

**5.** The Omnibus Budget Reconciliation Act provides two exceptions to its provisions. Households with at least one member sixty years of age or older or one member receiving certain specified disability benefits are exempted from the Act's cuts. The Commonwealth produced no evidence of any attempts to incorporate specially into its data base new additions to families to aid in the proper application of these exceptions. Further, the necessity of having birth dates of all family members and the source of any disability benefits received by any family members accurately recorded in the data base for the purpose of these cuts increases substantially the risk of erroneous deprivations.

plex eligibility determinations for food stamps.

I also note, not insignificantly, that the risk of erroneous deprivation of benefits, although substantial in any food stamp determination, is increased by the lack of adequate notice in this case. Providing specific detailed information on the notice (that is, the basis of the calculation and the specifics of any cuts) would have allowed recipients to correct deficient information on household composition and recent income changes, two factors essential to accurate determinations under the new program. Further, providing notice of these changes in advance of the mailing of the Authorizations to Purchase would have given the Commonwealth time to resolve disputes before any deprivation of benefits occurred.

### 3. The Government Interest

■ The interest asserted by the Commonwealth in withholding timely and adequate notice is one of preventing administrative inconvenience and cost. I recognize that the Commonwealth's interest "in conserving scarce fiscal and administrative resources ... is a factor that must be weighed." *Mathews*, 424 U.S. at 348, 96 S.Ct. at 909. By the same token, however, administrative convenience "is not a controlling weight in determining whether due process requires a particular procedural safeguard," *id.*; further, the administrative burden is "not overriding in the welfare context." *Goldberg*, 397 U.S. at 266, 90 S.Ct. at 1019.

I have two reactions to the Commonwealth's asserted interest in this case. First, I view it as a relatively negligible interest. As the court in *Willis* stated forcefully:

Furthermore, the Court does not discern any real hardship to defendant in requiring him to send out more informative notices of reductions of food stamps. If plaintiffs were given an adequate notice in the first instance, it is quite possible that defendant could have handled questions or objections from food stamp recipients in a more orderly fashion. Also,

had plaintiffs been informed by notice of the extent and meaning of the reduction in their food stamps, in many instances defendants' Department would have avoided the time and expense involved in recipients making individual visits.

499 F.Supp. at 759.

Second, to the extent the Commonwealth is concerned that my decision will require them to pay nonrecoverable excess benefits to ineligible recipients, I fully subscribe to the views of Justice Brennan in *Goldberg* that "the State is not without weapons to minimize these increased costs. Much of the drain on fiscal and administrative resources can be reduced by developing procedures for a *prompt* pre-termination hearing and by skillful use of personnel and facilities." *Goldberg*, 397 U.S. at 266, 90 S.Ct. at 1019 (emphasis supplied).

### III. Holding

■ In balancing these three factors, I hold that the harm to individual recipients on the facts of this case is substantial, that there is a high risk of erroneous deprivation of food stamp benefits, that this risk is exacerbated by the particular form of notice chosen by the Commonwealth, and that the governmental interest asserted is, at best, minimal. Specifically, I hold that the Commonwealth's proposed form of notice is constitutionally deficient in three distinct respects, each of which justifies the injunctive relief provided for in this case:

First, contrary to well established principles of procedural due process law, the notice in this case will not be received by the recipients in advance of the reductions and/or terminations. *See Goldberg*, 397 U.S. at 267–68, 90 S.Ct. at 1020–21; *Banks*, 525 F.2d at 842. As already noted, the failure of the Commonwealth to provide advance notice has seriously exacerbated the risk of erroneous deprivations in Pennsylvania.

Second, the proposed notice is constitutionally deficient because it does not state the reasons for the proposed reductions and/or terminations. *See Banks*, 525 F.2d at 842 (notice must fully explain food stamp

calculation "so that members of the class can ascertain whether they are receiving the correct amounts of coupon allotment"); *Vargas v. Trainor*, 508 F.2d 485, 489–90 (7th Cir. 1974) (notice advising recipients that they could learn the reasons for the proposed reductions or terminations by inquiring of their caseworkers held unconstitutional; court held that the state could not place the burden for ascertaining the reasons for termination on recipients), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975); *Willis*, 499 F.Supp. at 757, 757 n.14 (citing cases); *Malanson v. Wilson*, No. 79–116 (D.Vt. Aug. 12, 1980) ("It is true that defendant's notice invites the recipient to inquire further or to request a hearing, but this improperly places on the recipient a burden of acquiring notice whereas due process directs defendant to supply it. . . . We find that this procedure violates the due process guarantees of the fourteenth amendment by failing adequately to inform food stamp recipients of the factual, legal and mathematical grounds for decisions to reduce benefits.").

I therefore hold that the Commonwealth's proposed form of notice is constitutionally deficient because it does not include an explanation of the statutory change necessitating the reductions and/or terminations in benefits, because it does not contain an explanation of the two exceptions (that is, the presence of an elderly or disabled person in the household), because it does not contain a statement of the figures used in the calculations, and because it does not include a statement of the new food stamp benefit level for each household.[6]

Finally, the Commonwealth's proposed notice is also deficient because it does not explain fully the recipients' rights to a fair hearing, including the time period within which recipients can appeal the adverse determinations and the recipients' statutory rights to a continuation of benefits if their appeal is based on an alleged miscalculation of benefits or eligibility dispute. Recognizing that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902, I hold that, in this context, the fourteenth amendment required a complete explanation of appeal rights. *See Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 14 n.15, 98 S.Ct. 1554, 1563 n.15, 56 L.Ed.2d 30 (1978) (noting the diverse educational backgrounds of lay consumers of electrical power, the Court holds that "recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered."). *See also Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 834 (3d Cir. 1978) ("just as a hearing which does not afford a meaningful opportunity to be heard may be as fatal to due process as a denial of any hearing at all, so too constitutionally mandated notice which is inadequate under the circumstances may be as fatal to due process as no notice at all").

The balancing of interests mandated by *Mathews* has enabled me to conclude both that plaintiffs have prevailed on the merits and that a balancing of the equities justifies imposition of permanent injunctive relief. I therefore find for plaintiffs and enjoin defendants, their officers, agents, employees, and servants, their successors in office and persons in concert and participation with them, from reducing and/or terminating plaintiffs' food stamp benefits without constitutionally adequate notice.[7]

---

**6.** This final deficiency is particularly significant in Allegheny and Philadelphia Counties. As noted earlier, the record shows that recipients in those two counties will receive their Authorizations to Purchase at central locations such as banks while receiving their notices of reductions and/or terminations in the mail at their home addresses. The resultant confusion could most easily be remedied by including on the mailed notice a statement of the new food stamp benefit level for each household.

**7.** This decision does not strike down the Department of Agriculture's regulations on constitutional grounds. These regulations require "State agencies [to] send individual notices to households to inform them of the change." 7 C.F.R. § 273.12(e)(2)(ii). I construe those regulations to require *constitutionally* sufficient notice which, for the reasons stated above, I find missing in this case. Although the Commonwealth argues that the Department of Agriculture has approved their notice, I do not feel

At the Commonwealth's request, I also retain jurisdiction over this matter in order to review the new proposed form of notice that the Commonwealth develops before mailing to food stamp recipients.

bound by the interpretation of the Administrator of the Mid-Atlantic Region of the Food and Nutrition Service of the United States Depart-

ment of Agriculture that Pennsylvania's notice complies with the Constitution.