[Civ. No. 28641. Fourth Dist., Div. One. Jan. 19, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ZOLA B. SWINK, Defendant and Appellant.

**COUNSEL**

Lightner & Castro and Christopher J. Schatz for Appellant.

Lloyd M. Harmon, Jr., County Counsel, Howard P. Brody, Chief Deputy County Counsel, and Barbara B. Baird, Deputy County Counsel, for Respondent.

Opinion

**WORK, J.**—Zola B. Swink appeals an order denying her motion for discharge of forfeiture of cash bail she had posted to guarantee the municipal court appearance of an acquaintance. She contends the trial court erred because (1) failure to conform to the procedural requirements of former Penal Code[1] section 1305 compels discharge; (2) the forfeiture in this manner violated her right to due process of law (5th, 14th Amends. to U.S. Const. and Cal. Const., art. I, §§ 7, 15); (3) the municipal court should be estopped from relying on the filing time limits of section 1305; and (4) general principles of contract law require discharge of the forfeiture. We reverse because Swink was denied procedural due process in that the notice she received was not reasonably calculated to inform her of the underlying statutory procedural scheme to obtain a discharge of forfeiture, especially the governing jurisdictional period of limitations.

*Factual and Procedural Background*

On November 21, 1981, Swink deposited $5,000 in cash in lieu of a bail bond pursuant to section 1295, to guarantee defendant Mario Linarez' appearance. When Linarez failed to appear for his preliminary hearing, cash bail was forfeited and a bench warrant issued. The court mailed a notice to Swink informing her of the forfeiture, stating, "bail will remain forfeited until the defendant appears." Her husband, Warren, understood this statement to mean the bail would be reinstated and returned whenever defendant returned to court, and as requiring no action on their part to protect their interests in the $5,000 until that time.

Regarding the notice, the clerk failed to execute an affidavit of proof of service by mail. However, a minute entry in the court's file states: "2/3/82 bailor notified of bail forfeiture. A. Ramirez, Deputy Clerk." On August 13, 1982, more than 180 days following notice of forfeiture pursuant to section 1307, the cash bail was paid over to the county treasurer. Ten days later, Linarez appeared in court.

Section 1305 permits a forfeiture to be set aside only if a defendant appears in court within 180 days[2] following the forfeiture. Swink was never told she had only six months after the forfeiture to get her money back

---

[1]All statutory references are to the Penal Code.

[2]However, where notice is mailed, the time limit is 185 days. (*People* v. *National Auto. & Cas. Ins. Co.* (1979) 92 Cal.App.3d 907, 912 [155 Cal.Rptr. 602].)

pursuant to section 1305.[3] Upon learning Linarez had returned and been sentenced, the Swinks asked the El Cajon Municipal Court when their cash bail funds would be returned. To their surprise, they were told they were too late.

SWINK WAS DENIED DUE PROCESS, AS THE NOTICE SHE RECEIVED PURSUANT TO SECTION 1305 WAS CONSTITUTIONALLY DEFICIENT

Swink contends the notice sent pursuant to section 1305[4] denied her procedural due process, because it not only did not tell her of the procedural and time limitations on her right to set aside the forfeiture, but the misleading statement, the "bail will remain forfeited *until* the defendant appears," caused her and her husband to take no action until Linarez returned to court. She does not dispute section 1305 provides her a right to a hearing to set aside the forfeiture. She contends, however, that even though section 1305 directs notice be given to the surety or depositor of the declaration of forfeiture and further provides for a hearing process to determine the propriety of such a "taking," such a notice is meaningless to a lay surety unless it informs that person of the right to participate in the hearing process.[5] Consequently, the issue before us is whether due process required the court to inform the surety or depositor of the statutory procedures for setting aside the forfeiture and time limitations in its notice of forfeiture.[6]

Procedural due process requires an individual be accorded notice and some form of hearing before he is deprived of a protected property or liberty interest. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 308 [138 Cal.Rptr. 53, 562 P.2d 1302].) In other words, "before a person is deprived of his life, liberty or property he must be given notice of the proceedings against him [citations], he must be given an opportunity to defend himself [citations], and the propriety of the deprivation

---

[3]Linarez had lived in the Swink's home for approximately two years before his arrest in November 1981. Swink posted bail on his behalf because she was troubled and distressed by his predicament. Upon learning he had failed to appear, she wrote his parents asking them to tell him to return. Before the expiration of 180 days, she spoke with him by phone, urging him to return to the United States to take care of his problems. He replied he would come back, "but said it would take some time."

[4]Section 1305 appears in its entirety in appendix A.

[5]By contrast, the Legislature has insured that lay persons who post property bonds are specifically notified their forfeitures will be governed by the provisions of section 1305, by incorporating reference to that section in the bond itself.(§ 1278.)

[6]Swink's procedural due process claim involves the fulfillment of the notice requirement pursuant to section 1305 as specifically applied here and not whether section 1305 facially satisfies procedural due process requirements. As to the latter, two courts of appeal in *People* v. *Beverly Bail Bonds* (1982) 134 Cal.App.3d 906, 909-911 [185 Cal.Rptr. 36], and *People* v. *Surety Insurance Co.* (1978) 82 Cal.App.3d 229, 236-240 [147 Cal.Rptr. 65], have concluded it does.

must be resolved in a manner consistent with essential fairness. [Citations.]" (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].) Procedural due process requires "fair play." (*Mihans* v. *Municipal Court* (1970) 7 Cal.App.3d 479, 484 [87 Cal.Rptr. 17].)

■    Although the fundamental requisite of due process of law is the opportunity to be heard, this right is meaningless unless one knows the matter is pending and can choose for himself whether to appear or default, acquiesce or contest. (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32, 96 S.Ct. 893], quoting *Armstrong* v. *Manzo* (1965) 380 U.S. 545, 552 [14 L.Ed.2d 62, 66, 85 S.Ct. 1187]), and "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such a nature as reasonably to convey the required information. . . . [¶] The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at p. 314-315 [94 L.Ed. at pp. 873-874].)

■    Due process, unlike other legal rules, is not a technical concept, fixed in content unrelated to time, place and circumstances. Rather, it is flexible enough to provide such procedural protections as the particular situation requires. (*Mathews* v. *Eldridge, supra,* 424 U.S. 319, 333 [47 L.Ed.2d 18, 32]; *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593]; *Cafeteria Workers* v. *McElroy* (1961) 367 U.S. 886, 895 [6 L.Ed.2d 1230, 1236, 81 S.Ct. 1743].) Thus, to resolve whether this notice was constitutionally sufficient requires us to analyze the respective affected governmental and private interests.

■    "More precisely, . . . identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the physical administrative burdens that the additional or substitute procedure requirement would entail." (*Mathews* v. *Eldridge, supra,* 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 33].)

In summary, "[t]he elements required to be included in the notice are to be tailored to the circumstances of the case and depend upon an appropriate accommodation of the competing private and governmental interests involved. The elements to be considered include the likelihood of eliciting a response and the practical difficulties of time and cost. [Citation.]" (*Wilson v. Health & Hospital Corp. of Marion Cty.* (7th Cir. 1980) 620 F.2d 1201, 1214.) Here, it is apparent *Mullane* and the due process clause require a more substantive and informative notice designed "to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' [Fn. omitted.]" (*Memphis Light, Gas & Water Div.* v. *Craft* (1978) 436 U.S. 1, 14 [56 L.Ed.2d 30, 42, 98 S.Ct. 1554]; *Transco Sec., Inc. of Ohio* v. *Freeman* (6th Cir. 1981) 639 F.2d 318, 323.) In *Craft*, the Supreme Court held the public utility's notice to customers it was terminating gas and electric services failed to satisfy due process because the notices did not inform the customers of the process for contesting terminations. Contrary to the county counsel's position, the *Craft* holding has been extended to situations where the hearing procedures are set forth within municipal ordinances and statutory law. (See, e.g., *Finberg* v. *Sullivan* (3d Cir. 1980) 634 F.2d 50; *Wilson* v. *Health & Hospital Corp. of Marion Cty., supra,* 620 F.2d 1201; *Deary* v. *Guardian Loan Co., Inc.* (S.D.N.Y. 1982) 534 F.Supp. 1178; *Philadelphia Welfare Rights Org'n* v. *O'Bannon* (E.D. Penn. 1981) 525 F.Supp. 1055.)

The notice here is constitutionally deficient because it fails to tell Swink of the statutory procedure to set aside the declaration of forfeiture, including the time period within which to do so. (See generally, *Philadelphia Welfare Rights Org'n* v. *O'Bannon, supra,* 525 F.Supp. 1055, 1061.) It merely refers to the declaration of forfeiture without telling her of the pending action (i.e., the perfection of the forfeiture (see generally, *People* v. *Beverly Bail Bonds, supra,* 134 Cal.App.3d 906, 909-910; *People* v. *Surety Insurance Co., supra,* 82 Cal.App.3d 229, 236; section 1305)), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits.[7] Moreover, it implies the absence of time limitations and the automatic discharge of the forfeiture upon defendant's appearance.[8]

---

[7]"The statute setting forth the requirements empowering a court to set aside a bail forfeiture (Pen. Code, § 1305) sets jurisdictional time limitations for the commencement of the procedure and for the making of the order. (*People* v. *Black* (1961) 55 Cal.2d 275, 277 [10 Cal.Rptr. 459, 358 P.2d 915]; *People* v. *Stuyvesant Ins. Co.* (1963) 216 Cal.App.2d 380 [31 Cal.Rptr. 208]; *People* v. *United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441 [77 Cal.Rptr. 310].)" (*People* v. *Wilshire Ins. Co.* (1975) 45 Cal.App.3d 814, 817 [119 Cal.Rptr. 702].)

[8]Had Swink known of the governing procedures and time limitations, she might have been able to coax Linarez into surrendering or, at the very least, be permitted to exercise her discretion regarding whether to invest more money by hiring an investigator to track him down and return him to court. For, if one underlying purpose of this procedure is to motivate a surety to obtain a defendant's appearance, then notice is necessary to implement that purpose.

The interests balancing mandated by *Mathews* v. *Eldridge, supra,* 424 U.S. 319, 335 [47 L.Ed.2d 18, 33], shows the Swink's interest in recouping their deposit is significant; the risk of erroneous deprivation of that interest through procedures used is substantial for those who are not professional sureties or bail bondsmen; the probable value of additional or substitute procedural safeguards is substantial considering the consequences of failing to discharge the forfeiture; and the government's interest in not providing a more complete and informative notice is minimal, as the cost of modifying the letter notice is de minimis. (See generally, *Finberg* v. *Sullivan, supra,* 634 F.2d 50, 62; *Sorenson* v. *Secretary of Treasury of United States* (W.D. Wash. 1982) 557 F.Supp. 729, 738; *Philadelphia Welfare Rights Org'n* v. *O'Bannon, supra,* 525 F.Supp. 1055, 1058-1061.)

The trial court's impression procedural due process does not require informing individuals of their individual rights conflicts with the elementary and fundamental nature of the requirement of notice to guarantee procedural due process. (See generally, *Finberg* v. *Sullivan, supra,* 634 F.2d 50, 61-62; *Wilson* v. *Health & Hospital Corp. of Marion Cty., supra,* 620 F.2d 1201, 1215.) As in *Craft,* restraint and execution procedures can be anticipated to be taken against individuals of "various levels of education, experience, and resources." (*Memphis Light, Gas & Water Div.* v. *Craft, supra,* 436 U.S. 1, 14, fn. 15 [56 L.Ed.2d 30, 42].) Thus, providing in essence only that certain individuals (i.e., the professional sureties and bail bondsmen and persons who post property bonds) be informed of action taken or contemplated, results in a "restrictive view of the process due in the context of this case [which] would erect an artificial barrier between the notice and hearing components of the constitutional guarantee of due process." (*Ibid; Deary* v. *Guardian Loan Co., Inc., supra,* 534 F.Supp. 1178, 1187.) Sureties and depositors within the context of this case are entitled to notice of both the underlying statutory scheme governing the forfeiture process and the controlling time limitations. (See *Finberg* v. *Sullivan, supra,* 634 F.2d 50, 61-62; *Deary* v. *Guardian Loan Co., Inc., supra,* 534 F.Supp. 1178, 1187-1188; *Philadelphia Welfare Rights Org'n* v. *O'Bannon, supra,* 525 F.Supp. 1055, 1061.) The conveyance of this information places no great burden on court clerks.

Finally, within this context, we agree with the court in *Wilson* v. *Health & Hospital Corp. of Marion Cty., supra,* 620 F.2d 1201, 1215, it is unrealistic to require each individual to be conversant with the procedural provisions of municipal ordinances or statutory law. "When the individual fails to exercise the fundamental procedural right to a hearing granted to him under the ordinance and required by due process because he was not informed of that right by the government authorities, we do not believe it is adequate for the government simply to rely upon the time worn adage

'ignorance of the law is no excuse.' Thus, we find that appellee's notice procedure of relying upon the public character of the ordinance was not 'reasonably calculated' to inform appellant of the availability of a hearing and that the personal notice is required and will not impose an unreasonable burden upon the appellees." (*Ibid.*)

*Disposition:*[9]

Order reversed.

Brown (Gerald), P. J., and Wiener, J., concurred.

A petition for a rehearing was denied February 3, 1984.

---

APPENDIX A

§ **1305.** (a) If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his presence in court is lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes, and the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited, and, if the amount of the forfeiture exceeds one hundred dollars ($100), the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety on the bond or depositor of money instead of bond, and shall execute a certif-icate of such mailing and place it in the court's file in the case. If the surety is an authorized corporate surety insurer, and if the bond has plainly printed or stamped thereon the address of its principal office, such notice shall be mailed to such surety at such address, and mailing to the bail agent or solicitor who posted the bond shall not constitute compliance with this section; the clerk shall at the same time send a copy of such notice to the bail agent or solicitor who posted the bond. If the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond.

But if at any time within 180 days after such entry in the minutes or, if mailing of notice of forfeiture is required, within 180 days after mailing such notice of forfeiture, the defend-ant and his bail appear, and satisfactorily excuse the defendant's neglect or show to the

---

[9]In light of our holding, we do not address Swink's remaining contentions.

satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just, and may order the bail reinstated and the defendant released again on the same bond. If at any time within 180 days after such entry in the minutes or mailing as the case may be, the bail should surrender the defendant to the court or to custody, the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just.

If within 180 days after such entry in the minutes or mailing as the case may be, it is made to appear to the satisfaction of the court that the defendant is dead or is otherwise permanently unable to appear in court due to illness, insanity, or detention by civil or military authorities, and that the absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just. If within 180 days after such entry in the minutes or mailing as the case may be, it is made to appear to the satisfaction of the court that the defendant is temporarily disabled by reason of illness, insanity, or detention by civil or military authorities and is therefore unable to appear in court at any time during the remainder of such 180 days, and that the absence of the defendant has not been with the connivance of the bail, then the period of time during which the disability continues shall not be deemed part of such 180 days. Upon a finding by the court that a reasonable period of time is necessary in order to return the defendant to court upon the termination of the disability, then such period of time, as fixed by the court, shall not be deemed part of such 180 days.

Unless waived by the district attorney or other prosecuting attorney, no order discharging the forfeiture of the undertaking or deposit shall be made without opportunity for hearing and the filing of a notice of motion for such order setting forth the basis for relief, with proof of service upon the district attorney or other prosecuting attorney at least 10 days prior to the time set for hearing of the motion and otherwise in compliance with the provisions of Section 1010 of the Code of Civil Procedure. Such notice may be given by the surety insurer, its bail agent, the surety, or depositor of money, any of whom may give such notice and appear either in person or by attorney. Such notice of motion must be filed within 180 days after such entry in the minutes or mailing as the case may be, and must be heard and determined within 30 days after the expiration of such 180 days, unless the court for good cause shown, shall extend the time for hearing and determination.

(b) If, without sufficient excuse, the defendant neglects to appear for arraignment, trial, judgment, or upon any other occasion when his presence in court is lawfully required, or to surrender himself in execution of the judgment, but the court has reason to believe that sufficient excuse may exist for his neglect to appear or surrender himself, the court may continue the case for such period as it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail or issuing a bench warrant.