Filed 12/30/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076580 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. PLBC8803) |
| BRYANT RUIZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kathleen M. Lewis, Judge. Reversed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Bryant Ruiz appeals the trial court's order denying his motion to dismiss a petition to revoke parole filed by the Department of Corrections and Rehabilitation (CDCR) for lack of jurisdiction.  Even though the parties stipulated Ruiz was not convicted of a serious felony and should have been placed on post-release community supervision (PRCS) rather than parole when he was released from prison, the trial court denied Ruiz's motion to dismiss the petition as untimely under Penal Code[1] section 3000.08, subdivision (*l*), because he did not challenge his supervision placement within 60 days of his release.  Ruiz contends the application of section 3000.08, subdivision (*l*) in this instance infringed his constitutional rights to due process and equal protection.  We conclude the application of the 60-day limitation in this case violated Ruiz's procedural due process rights.  Therefore, we reverse the order and direct the trial court to enter a new order granting Ruiz's motion to dismiss and transferring Ruiz from parole supervision to PRCS.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

Ruiz pleaded guilty to unlawful possession of brass knuckles (§ 21810) and misdemeanor vandalism (§ 594, subds. (a), (b)(2)(A)) for defacing another's property by tagging where the value of the damage was less than $400.  He admitted an allegation the vandalism was done in association with and for the benefit of a street gang (§ 186.22, subd. (d)).  He was sentenced to three years in state prison.

---

[1]     Statutory references are to the Penal Code unless otherwise stated.

2

Ruiz was released from prison on parole supervision on April 9, 2018. The CDCR provided him a document entitled "Notice and Conditions of Parole," which stated he was being released to parole supervision and advised him of the conditions of his parole. The notice advised him of the right to appeal the conditions of his parole.

Ruiz was continued on parole without formal revocation seven times between April and the end of December 2018. The CDCR filed a parole revocation petition in June 2019 alleging Ruiz had absconded parole supervision since January 2019.

On June 24, 2019, the court revoked Ruiz's parole and set a hearing for the next day. Ruiz's appointed counsel for the parole revocation proceeding discovered Ruiz's crimes did not constitute a serious felony and, therefore, he should have been placed on PRCS instead of under parole.

The next day, Ruiz filed a form requesting a parole revocation evidentiary hearing and challenging parole jurisdiction. He also moved to dismiss the parole revocation proceeding on grounds that the Department of Parole lacked jurisdiction and the application of section 3000.08, subdivision (*l*), violated his constitutional rights of equal protection and due process. He asked the court to terminate parole supervision and order him to report to PRCS.

Ruiz also completed and mailed an administrative appeal form on June 25, 2019. The CDCR cancelled the administrative appeal as untimely under section 3000.08, subdivision (*l*) and, therefore, not within the jurisdiction of the CDCR.

The People opposed Ruiz's motion to dismiss asserting, as they do here, that the court did not have the authority to terminate parole or address Ruiz's classification issues based, in part, on section 3000.08, subdivision (*l*).

3

The People asserted Ruiz should seek a remedy through a petition for habeas corpus after exhausting his administrative remedies. Although the People conceded the CDCR made a mistake and should have placed Ruiz on PRCS instead of parole supervision because he was not charged with a serious felony, they contended section 3000.08, subdivision (*l*) prohibits transfer of supervision to PRCS. They further contended section 3000.08 is not unconstitutionally vague and Ruiz did not show the statute was applied in an unconstitutional manner.

The trial court found it had jurisdiction to hear Ruiz's motion, but denied the motion to dismiss the petition. The court determined a parolee, such as Ruiz, has the right to contest the validity of his type of supervision within the context of a parole violation hearing. The court noted the parties agreed Ruiz should have been placed on PRCS rather than parole. However, the court concluded section 3000.08, subdivision (*l*) was not unconstitutionally vague and the application of the 60-day limit for challenging supervision placement did not violate due process. The court revoked Ruiz's parole, reinstated it with the same terms and conditions, and ordered Ruiz to serve 100 days in custody as a sanction with credits of 93 days.

III

DISCUSSION

A

*Jurisdiction*

" 'PRCS was created as part of the 2011 Criminal Justice Realignment Act (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1), which "changed the paradigm for the incarceration and postconviction supervision of persons convicted of certain felony offenses." [Citation.] "In the wake of realignment,

4

a person released from prison is subject to a period of either parole (§ 3000 et seq.) or postrelease community supervision (§ 3450 et seq.). [Citation.] Parole applies to high-level offenders, i.e., third strikers, high-risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes. (§ 3451, subd. (b).) All other released persons are placed on [PRCS]. (§ 3451, subd. (a).)" ' " (*People v. Johnson* (2020) 45 Cal.App.5th 379, 392 (*Johnson*).)

An objective of realignment was to transfer substantial responsibilities from the state to the local level to reduce recidivism and improve public safety. Reaffirming its commitment to reducing recidivism (§ 17.5, subd. (a)(1)), the Legislature declared that "[c]riminal justice policies that rely on building and operating more prisons" were "not sustainable" and did "not result in improved public safety" (§ 17.5, subd. (a)(3)); that "California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices" to "achieve improved public safety" (*id.*, subd. (a)(4)); and that to improve public safety and facilitate reintegration back into society, "low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses" should be realigned "to locally run community-based corrections programs," (*id.*, subd. (a)(5)).

The Realignment Act shifted jurisdiction over most petitions to revoke parole from the Board of Parole Hearings to the superior courts. (§ 3000.08, subds. (a), (f), added by Stats. 2011, ch. 39, § 38 [Assem. Bill No. 117]; amended by Stats. 2012, ch. 43, § 35 [Sen. Bill No. 1023].) "In 2012 the Legislature amended section 1203.2 to incorporate parole into the statutes governing revocation of probation, mandatory supervision, and postrelease community supervision. (§ 1203.2, subds. (a), (b)(1), (f)(3)(E), as amended by

5

Stats. 2012, ch. 43, § 30 [Sen. Bill No. 1023].) Its stated intent was 'to provide for a uniform supervision revocation process for petitions to revoke probation, mandatory supervision, postrelease community supervision, and parole.' (Stats. 2012, ch. 43, § 2, subd. (a).)" (*People v. DeLeon* (2017) 3 Cal.5th 640, 647 (*DeLeon*).)

In *Johnson, supra,* 45 Cal.App.5th at page 401, we rejected the People's argument that the trial court did not have jurisdiction to transfer a defendant from parole supervision to PRCS in the context of a parole revocation proceeding "merely because the defendant also has the remedy of an administrative appeal and a habeas corpus petition." We concluded that, although a trial court may not terminate parole as a sanction for violating the conditions of parole, it may transfer someone from parole supervision to PRCS when the CDCR has made a mistake in classifying the person. (*Johnson, supra*, 45 Cal.App.5th at p. 396.)

"[T]he placement of an inmate on parole supervision rather than PRCS is *not* a discretionary decision. The law provides that unless the requirements for placement on parole are met, 'all other offenders released from prison *shall* be placed on [PRCS].' (§ 3000.08, subd. (b), italics added.) In contrast, many of CDCR's decisions about which conditions of parole to impose are discretionary. (See, e.g., §§ 3002–3004, 3006, 3008–3010, 3010.5, 3010.8.) Because the Legislature gave trial courts the authority to intrude on *discretionary* choices by CDCR regarding parole supervision, it is reasonable to conclude that it also gave trial courts the authority to correct *errors* made by CDCR in applying the *mandatory* rules determining a defendant's classification." (*Johnson, supra*, 45 Cal.App.5th at p. 400, fn. 14.) Thus, "the trial court has the authority in a parole revocation proceeding to consider the issue of whether the defendant was improperly placed on parole

6

supervision rather than PRCS and, if appropriate, to order that supervision be transferred from parole to PRCS under the provision allowing it to 'modify … supervision of the person.' (§ 1203.2, subd. (b)(1).)" (*Johnson,* at p. 402.)

Here, as in *Johnson*, the CDCR mistakenly classified a defendant as a serious felon and assigned him to parole supervision when he should have been placed on PRCS. We agree with the rationale of *Johnson* and conclude that, under these circumstances, the trial court had jurisdiction to consider the motion to dismiss the revocation petition as well as the related request to transfer his supervision to PRCS.

We consider the issue on Ruiz's appeal from the revocation proceeding order as a direct appeal from an "order made after judgment, affecting the substantial rights of a party." (§ 1237, subd. (b); *People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412 disapproved on other grounds in *DeLeon, supra,* 3 Cal.5th at p. 646; see also *People v. Austin* (2019) 35 Cal.App.5th 778, 785.) We, therefore, reject the People's contention that this appeal should be dismissed and a petition for writ of habeas corpus is the proper vehicle to challenge his form parole supervision after exhaustion of his administrative remedies.

B

*Procedural Due Process*

The court denied Ruiz's challenge to his placement on parole as untimely based upon section 3000.08, subdivision (*l*), which states: "Any person released to parole supervision pursuant to subdivision (a) shall, regardless of any subsequent determination that the person should have been

7

released pursuant to subdivision (b), remain subject to subdivision (a) after having served 60 days under supervision pursuant to subdivision (a)."[2]

Ruiz contends the application of this statute to preclude his transfer to PRCS violated his due process rights because he was not provided notice of either his right to be released on PRCS or of the 60-day period in which to seek relief from his parole placement. We did not reach this issue in *Johnson, supra,* 45 Cal.App.5th 379 because we determined Johnson had not served 60 days under parole supervision after considering the time he served in local prison for parole violations. (*Id*. at pp. 404–405.) Here, the issue is

---

[2] Section 3451, subdivision (d) is a parallel provision stating, "A person released to [PRCS] pursuant to subdivision (a) shall, regardless of any subsequent determination that the person should have been released to parole pursuant to Section 3000.08, remain subject to subdivision (a) after having served 60 days under supervision pursuant to subdivision (a)." Both sections imposing a 60-day limitation on the ability to challenge supervision placement were added to a budget trailer bill by amendment shortly before passage. Legislative materials include no rationale or commentary regarding why the provisions were added. (Stats. 2013, ch. 32, §§ 8, 9, 11, pp. 4, 38–39, 41, 44–45; Sen. Com. on Budget and Fiscal Review, Analysis of Sen Bill No. 76 (2013–2014 Reg. Sess.); Sen. Com. on Budget and Fiscal Rev., Analysis of Sen. Bill No. 76 (2013–2014 Reg. Sess.) as amended June 13, 2013, pars. 6, 9; Sen. Rules Com., Off. of Sen. Floor Analysis, 3rd reading analysis of Sen. Bill No. 76, as amended June 13, 2013, par. 7.) A report from the Department of Finance prepared for Governor Brown noted that the Board of Parole Hearings had no authority to make a decision regarding the disposition of an offender when it finds an offender should have been on PRCS and, conversely, county probation departments had no authority to make decisions related to an offender on PRCS who should have been on parole. The report stated the section was "intended to ensure that continuity of service is maintained for offenders who have been placed on county or state supervision erroneously by limiting the time period for transfer to 60-days [sic] after release from prison." (Dept. of Finance, Enrolled Bill Rep. on Sen. Bill 76 (2013–2014 Reg. Sess.) prepared for Governor Brown (June 20, 2013), p. 2.)

directly before us because the parties stipulated Ruiz served more than 60 days on parole before his appointed attorney discovered the CDCR's error while preparing for the revocation proceeding.

1

We begin with the relevant facts to which the parties stipulated. The CDCR mistakenly placed Ruiz under parole supervision rather than PRCS since his convictions did not constitute a serious felony.

Ruiz's change of plea form did not specify which form of supervision he would be under when released from prison. The plea form advised Ruiz the maximum punishment as a result of his plea could include four years of "parole or post-release community supervision." The trial court, in accepting the plea, noted Ruiz's potential exposure included "four years on parole."

The document the CDCR provided to Ruiz upon his release from prison informed him he could appeal the "special conditions of [his] parole." It did not provide notice of why he was placed on parole rather than PRCS, that he was able to appeal his supervision classification, or that such an appeal must be initiated within the first 60 days of his supervision.

2

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 (*Morrissey*).) "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

9

procedural requirement would entail." (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335.)

Individuals facing parole revocation are constitutionally entitled to certain minimum due process protections. (*DeLeon, supra,* 3 Cal.5th at pp. 644, 653, citing *Morrissey, supra,* 408 U.S. at p. 480.) Although the full panoply of rights due a defendant in a criminal prosecution do not apply to postconviction revocation proceedings, such proceedings deprive an individual of conditional liberty and require some due process protections. (*Morrissey,* at p. 480.) In *DeLeon*, for example, the California Supreme Court determined due process required superior court revocation proceedings conducted under the Realignment Act to include a preliminary hearing as well as a final revocation hearing. (*DeLeon*, at pp. 657–658.)

As seen in this case and in *Johnson*, there is a risk the CDCR may mistakenly classify individuals and place them under parole supervision rather than PRCS. Applying the 60-day limitation of section 3000.08, subdivision (*l*) to bar a challenge to a classification error without requiring notice of either the supervision classification or the ability to challenge the classification will result in deprivation of parolees' conditional liberty interests.

There are considerable differences in burdens on liberty between PRCS and parole supervision. Under PRCS, the maximum period of supervision is three years (§ 3451, subd. (a)), whereas the maximum period of parole supervision is up to five years, depending on the conviction (§ 3000, subd. (b)) and the period can be extended up to as much as 10 years depending on the initial length of parole and violations (§ 3000, subd. (b)(6)(A)–(C)). An individual on PRCS may petition for termination of supervision after six months (§ 3456, subd. (a)(2)) and must be terminated within a year if there

10

are no violations (§ 3456, subd. (a)(3)).  An individual on parole supervision, however, has no right to early termination.  (§ 1203.2, subd. (b)(1).)  Additionally, an individual on PRCS is not subject to electronic monitoring (§ 3453, subds. (a)–(s)), but a parolee is subject to electronic monitoring (§ 3004, subd. (a)).

"Notice is fundamental to due process.  'Engrained in our concept of Due Process is the requirement of notice.  Notice is sometimes essential so that the citizen has the chance to defend charges.  Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed.  Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act.' "  (7 Witkin, Summary of Cal. Law (11th ed. 2020) Constitutional Law, § 706, quoting *Lambert v. California* (1957) 355 U.S. 225, 228.)

The People argue that the statutes themselves provide adequate notice.  However, the California Supreme Court long ago concluded a statutory provision allowing a challenge to a state action does not afford an individual a fair opportunity to be heard if there is no requirement that he or she be given notice of the right to make the challenge.  (*In re Harris* (1968) 69 Cal.2d 486, 490 [former civil arrest and bail statutes held unconstitutional because there was no requirement of notice of the statutory right to apply to vacate an arrest or reduce bail].)  "[D]ue process of law required by the Fourteenth Amendment to the United States Constitution and article I, section 13, of the California Constitution is not afforded merely because [a] … defendant may be able to get a hearing as to the lawfulness of his imprisonment by chance or by grace.  The statute authorizing the deprivation must explicitly provide a fair opportunity for the defendant to be heard on that issue." (*Ibid*.)

11

In *People v. Swink* (1984) 150 Cal.App.3d 1076, 1081–1082, this court determined a forfeiture notice to a layperson was constitutionally deficient because it failed to advise the person of a statutory procedure to set aside a declaration of forfeiture and the time period to do so. " 'An elementary and fundamental requirement of due process in any proceeding ... is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.* [Citations.] *The notice must be of such nature as reasonably to convey the required information* [citation], and it must afford a reasonable time for those interested to make their appearance [citations].' " (*Traverso v. People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1169–1170, citing *Swink,* at p. 1081.)

Here, Ruiz was given notice he was placed on parole and that he could appeal the conditions of his parole. However, the CDCR did not provide Ruiz with notice of why he was classified for parole supervision rather than PRCS. Nor did it give him notice that he could challenge the form of his supervision or that he had only 60 days to do so under section 3000.08, subdivision (*l*).

Balancing the relevant interests, as required by *Mathews v. Eldridge, supra,* 424 U.S. at page 335, supports our conclusion that due process requires more notice than was given here. Although a 60-day limit for challenging placement may advance a legitimate governmental interest in maintaining continuity of supervision for a parolee, the application of section 3000.08, subdivision (*l*) without notice of either the classification or the statutory timeline to challenge the classification lays a trap for the unwary and poses a significant risk of an erroneous deprivation of conditional liberty interests if the CDCR misclassifies an individual and places that person on parole supervision rather than PRCS. The People have not shown

12

that additional notice would entail significant fiscal and administrative burdens.  A defendant could easily be informed of the opportunity for PRCS at the time of sentencing.  Additionally, the cost of modifying the notice given when an individual is released from prison would likely be de minimus.  (*Swink*, *supra*, 150 Cal.App.3d at p. 1082.)

We also reject the People's contention that Ruiz's ignorance of the law should not excuse his failure to challenge his classification within the first 60 days of his supervision.  The People refer to the maxim " '*ignorantia facti excusat, ignorantia juris non excusat*.'  Ignorance of facts excuses, ignorance of the law does not excuse." (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 396.)  This maxim is typically applied when considering whether a defendant had the necessary mens rea to be held responsible for a crime.  However, this is a different concept than whether a defendant received sufficient notice for due process purposes.  "When the individual fails to exercise the fundamental procedural right to a hearing granted to him under [a statute] and required by due process because he was not informed of that right by the government authorities, we do not believe it is adequate for the government simply to rely upon the time worn adage 'ignorance of the law is no excuse.' " (*Swink*, *supra*, 150 Cal.App.3d at pp. 1082–1083.)

For all these reasons, we conclude the application of section 3000.08, subdivision (*l*) to bar Ruiz's challenge to his admittedly erroneous placement under parole supervision violated his constitutional right to due process.  Given our conclusion, we need not reach his arguments that the statute is unconstitutionally vague or violates equal protection.

IV

The order denying Ruiz's motion to dismiss the petition for revocation of parole is reversed. On remand, the trial court is directed to grant the motion to dismiss and to transfer Ruiz from parole supervision to PRCS.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DATO, J.


14