**Stephany ROODVELDT**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.**

**Civ. A. No. 83–3412.**

United States District Court, E.D. Pennsylvania.

Feb. 6, 1984.

Jeffrey B. Albert, Philadelphia, Pa., for plaintiff.

Gregory S. Rubin, Paoli, Pa., for defendant.

### MEMORANDUM OPINION

CAHN, District Judge.

#### I. PRELIMINARY STATEMENT

This is an action for injunctive relief brought pursuant to the Federal Arbitra-

tion Act ("Arbitration Act"), 9 U.S.C. § 1, *et seq.*[1] The plaintiff, Stephany Roodveldt ("Roodveldt"), is a former employee of defendant Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch"). Roodveldt seeks equitable relief prohibiting Merrill Lynch from enforcing an injunction issued against her in the Court of Common Pleas of Montgomery County, Pennsylvania.[2] Roodveldt also seeks specific performance of a contractual arbitration clause and a stay of the Court of Common Pleas action pending arbitration.

There are two motions before me. One is Roodveldt's motion for preliminary injunctive relief.[3] The other is Merrill Lynch's motion to dismiss. Merrill Lynch moves to dismiss this action, urging that Roodveldt's complaint and motion fail to state a claim upon which relief can be granted. Both motions raise the same issue, that is, whether federal judicial authority may properly be exercised over state court proceedings. Accordingly, I have consolidated the motions and will evaluate the arguments presented by the parties in a single opinion. For the reasons set out in this opinion, Merrill Lynch's motion will be denied. Roodveldt's motion for a preliminary injunction will be granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

■ As the parties have submitted affidavits and other additional material, Merrill Lynch's motion will be treated as a Federal Rule of Civil Procedure 56 motion for summary judgment. Fed.R.Civ.P. 12(b)(6). Consequently, in regard to that motion the pleadings must be construed liberally in a light most favorable to the plaintiff, and all

doubt as to the existence of material facts must be resolved against the moving party. *Lynn v. Heyl and Patterson, Inc.*, 483 F.Supp. 1247, 1250 (W.D.Pa.1980), *aff'd*, 636 F.2d 1209 (3d Cir.1980); *Smith v. Webb*, 420 F.Supp. 600, 601 (E.D.Pa.1976). With these standards in mind, the factual and procedural background of this action is described below.

The material facts are undisputed. Stephany Roodveldt began her employment with Merrill Lynch on July 20, 1978. At that time, Roodveldt signed a document entitled "Account Executive Trainee Agreement" ("Trainee Agreement"). Paragraph 1 of the Trainee Agreement provides that during and after termination of Roodveldt's employment with Merrill Lynch, all records of Merrill Lynch, including the names and addresses of its clients, will remain the property of Merrill Lynch. Paragraph 2 of the Trainee Agreement contains a clause by which Roodveldt agreed not to solicit any Merrill Lynch clients whom she served or whose names became known to her while employed by Merrill Lynch, for a period of one year from the date of termination of Roodveldt's employment at the firm. Paragraph 5 of the Trainee Agreement states:

I agree that any controversy between myself and Merrill Lynch arising out of my employment, or the termination of my employment with Merrill Lynch for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the Constitution and Rules of the New York Stock Exchange, then in effect.

The Trainee Agreement contains other provisions, none of which are particularly relevant to the issues presently before me,

---

1. Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332(a), in that the Arbitration Act is not an independent source of subject matter jurisdiction. *Commercial Metals Co. v. Balfour Guthrie, & Co.*, 577 F.2d 264, 268–269 (5th Cir.1978). Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(a), as Roodveldt resides in this judicial district.

2. The Court of Common Pleas case is captioned *Merrill Lynch Pierce Fenner & Smith v. Stephany Roodveldt*, No. 83–09272, (Ct.C.P., Montgomery County filed June 22, 1983).

3. Though Roodveldt's motion is styled as a motion for preliminary injunctive relief, I have treated it as a motion for final injunctive relief, as it is clear that there are no additional facts in this case which I would need to consider in fashioning final injunctive relief.

except that paragraph 6 requires that the Trainee Agreement be construed under the laws of the State of New York. The Trainee Agreement is dated July 20, 1978, and is signed by "S. Roodveldt" and by a representative of Merrill Lynch.

Roodveldt was employed as an account executive by Merrill Lynch from July 20, 1978, through June 21, 1983. The evidence suggests that Roodveldt was a responsible and productive employee. The firm provided Roodveldt with training courses, preparation courses for the General Securities Examination, fringe benefits and office facilities. Merrill Lynch also referred Roodveldt to potential clients and reassigned to her some internal customer lists so that she could develop a client base. Roodveldt, in turn, was a profitable employee. Her commissions increased each year that she was employed by Merrill Lynch, and she was well regarded by her superiors and customers.

On June 21, 1983, Roodveldt informed her supervisor at Merrill Lynch, Lawrence Forlenza, that she was resigning in order to accept a position as Vice President at another brokerage firm. Forlenza advised Roodveldt that the company would not hesitate to resort to legal means in order to enforce the Trainee Agreement, and to prevent Roodveldt from soliciting Merrill Lynch clients. The next day, June 22, 1983, Roodveldt learned that Merrill Lynch planned to file suit against her based on alleged violations of the Trainee Agreement and other related claims pertaining to her conduct as a Merrill Lynch employee. Upon receiving this information, Roodveldt sent a demand to the New York Stock Exchange, requesting that all claims by Merrill Lynch against her be arbitrated, as mandated by paragraph 5 of the Trainee Agreement.

Merrill Lynch did file suit against Roodveldt, in the Court of Common Pleas of Montgomery County, Pennsylvania, seeking special, preliminary and permanent injunctive relief and money damages.[4] In response, Roodveldt submitted to that court a petition for stay of proceedings pending arbitration. On June 23, 1983, the Montgomery County Court of Common Pleas, without explicitly denying the petition for stay, issued a temporary restraining order against Roodveldt. Judge Albert R. Subers found, *inter alia*, that Merrill Lynch would suffer irreparable harm and loss if Roodveldt were permitted to continue soliciting Merrill Lynch accounts, clients and customers for her new employer. *Merrill Lynch Pierce Fenner & Smith v. Stephany Roodveldt*, No. 83–09272, (Ct.C.P., Montgomery County June 23, 1983) (issuing temporary restraining order). Judge Subers required Merrill Lynch to post $50,000 security, as a condition to obtaining such relief.

A preliminary injunction hearing began on June 28, 1983, and concluded July 7, 1983. On July 7, 1983, Judge Subers issued an opinion and order which enjoined Roodveldt from "[s]oliciting any business from any clients of Merrill Lynch whom defendant [Roodveldt] served or whose names became known to defendant while in the employ of Merrill Lynch." *Merrill Lynch Pierce Fenner & Smith v. Stephany Roodveldt*, No. 83–09272, (Ct.C.P., Montgomery County July 7, 1983) (order granting preliminary injunction). In addition, he ordered the establishment of an escrow account, to contain all commissions and fees earned by Roodveldt on transactions between her and former Merrill Lynch customers. Judge Subers ordered the preliminary injunction to remain in effect for a period of one year from June 21, 1983, until June 21, 1984, or until further order from his court upon final determination of the matter. He also ordered that the "same security of Fifty Thousand ($50,000.00) Dollars will continue." *Id.* In reaching his determination to grant injunctive relief against Roodveldt, Judge Subers analyzed and applied relevant precedent under New York law. He concluded that a preliminary injunction against Roodveldt to maintain the status quo was appropriate and in accordance with New York law.

---

4. *See* footnote 2, *supra*.

Roodveldt filed a notice of appeal to the Superior Court of Pennsylvania on July 14, 1983, and on July 15, 1983 she commenced this action. Roodveldt avers that she will suffer irreparable harm if the injunctive relief granted by Judge Subers is enforced and if further prosecution of the state court proceeding is not stayed. She alleges the state court injunction directly and indirectly prohibits her from soliciting and accepting business from prospective customers.

Roodveldt purports to bring this action under the Arbitration Act, 9 U.S.C. § 1, *et seq.* She claims the Arbitration Act empowers a federal court, upon a judicial determination that the subject matter of a dispute is arbitrable, to stay any proceedings with respect to the merits of the controversy.[5] Roodveldt therefore seeks to enjoin Merrill Lynch from prosecuting, enforcing or seeking to enforce any order of any court which is related to Roodveldt's conduct as a former employee of Merrill Lynch. This, of course, would include the injunction issued by Judge Subers in the Court of Common Pleas of Montgomery County, Pennsylvania. Roodveldt also asks that I order the parties to arbitrate whatever differences exist between them, inasmuch as paragraph 5 of the Trainee Agreement constitutes a written agreement to arbitrate all controversies.

## III. DISCUSSION

### A. *Merrill Lynch's Motion to Dismiss*

■ Merrill Lynch asserts that this action is barred by the doctrines of res judicata or collateral estoppel. The doctrine of res judicata provides that a final judgment on the merits entered by a court of competent jurisdiction bars any subsequent action on the same claim between the same parties or those in privity with them. *Davis v. United States Steel Supply*, 688 F.2d 166, 170 (3d Cir.1982) (applying Pennsylvania law), *cert. denied*, 460 U.S. 1014, 103

---

**5.** The pertinent sections of the Arbitration Act, for the purposes of the instant case, are 9 U.S.C. § 3 and § 4. 9 U.S.C. § 3 reads as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 4 reads as follows:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

S.Ct. 1256, 75 L.Ed.2d 484 (1983). Collateral estoppel is an aspect of res judicata, and precludes relitigation of a fact or an issue of law previously determined against a party or its privy in a prior suit on a different claim. *Id.*, 688 F.2d at 173 n. 9. In the instant case, I find that the order entered by Judge Subers in the Court of Common Pleas of Montgomery County does not constitute a final judgment, and therefore prevents Merrill Lynch from successfully arguing the application of res judicata or collateral estoppel. Judge Subers granted injunctive relief against Roodveldt, to continue for a period of one year, or until "final determination of the matter." The interlocutory nature of this order is not a final judgment for purposes of res judicata or collateral estoppel. It is well established in Pennsylvania, as elsewhere, that a ruling on a motion for preliminary injunction is merely provisional, not binding on the court or the parties in subsequent proceedings. *See, e.g., Pennsylvania Turnpike Commission v. McGinnes,* 169 F.Supp. 580, 582–83 (E.D.Pa.1958) (citations omitted; applying Pennsylvania law), *rev'd on other grounds,* 268 F.2d 65 (3d Cir. 1958), *cert. denied,* 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959). Even though the granting of a preliminary injunction may be appealable, it is not a final judgment entitled to preclusive effect. *See* 1B Moore's Federal Practice ¶ 0.409[1]. Moreover, under Pennsylvania law, a judgment is not final for purposes of res judicata or collateral estoppel while an appeal from that judgment is still pending. *See United States v. Employers Mutual Liability Insurance Company of Wisconsin,* 495 F.Supp. 840, 842 (W.D.Pa.1980) (citations omitted; applying Pennsylvania law). As discussed earlier, Roodveldt has filed an appeal to the Superior Court of Pennsylvania, seeking review of Judge Suber's disposition of the case brought by Merrill Lynch in the Court of Common Pleas. For the above reasons, I find unpersuasive Merrill Lynch's arguments that the doctrine of res judicata or the doctrine of collateral estoppel bars adjudication of this case in federal court.

Merrill Lynch also argues that principles of comity between state and federal courts require that summary judgment be entered for Merrill Lynch and against Roodveldt. In essence, Merrill Lynch asks me to decline to exercise jurisdiction over the action brought by Roodveldt, due to the existence of the pending state proceeding. Obviously, many aspects of this litigation have already been adjudicated in the Court of Common Pleas of Montgomery County. Merrill Lynch does not contend that federal court jurisdiction over Roodveldt's action is improper, but instead urges that principles of comity and abstention require me to decline to exercise otherwise valid jurisdiction over this case.

■ In evaluating Merrill Lynch's arguments, I recognize that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Generally, a federal district court has a duty to adjudicate a controversy which is properly before it. In *Colorado River* the Supreme Court painstakingly emphasized that abstention is an "extraordinary and narrow exception" to the obligation of a federal court to decide cases over which it has jurisdiction. *Id.*

■ The decisions of the Supreme Court have confined the circumstances in which abstention is appropriate to three general categories, none of which is present in the case before me. The Court in *Colorado River* discussed the three general categories of abstention at some length. First, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Id.* at 814, 96 S.Ct. at 1244 (citations omitted). The action brought by Roodveldt, however, does not present any federal constitutional issue for me to decide. Second, federal courts have abstained from exercising otherwise valid jurisdiction where difficult questions of

state law are presented "bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* (citations omitted). I do not find that the present case involves difficult or unresolved questions of state law. The equitable standards in regard to the granting of relief in this factual context are relatively clear. Moreover, the fact that I may reach a decision in adjudicating Roodveldt's claims that is different from the state court decision does not warrant abstention from the exercise of federal jurisdiction. *Id.* at 816, 96 S.Ct. at 1245–46 (citations omitted). Third, "abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings or collection of state taxes." *Id.* at 816, 96 S.Ct. at 1245–46 (citations omitted). As in the previous two categories of abstention discussed, this category does not mandate that I abstain from exercising jurisdiction over Roodveldt's claims.

■ Although this case does not fall within one of the three situations in which abstention may be appropriate, I must continue to evaluate the propriety of continuing to exercise jurisdiction over the action. As the Court made clear in *Colorado River,* and recently reiterated in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), situations will arise in which a federal and a state court contemporaneously exercise jurisdiction over a discrete action. In determining whether to adjudicate the controversy before it, the federal court is guided by certain principles. These principles "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, *quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). Thus a federal court in certain cases may dismiss an otherwise valid federal suit for reasons of wise judicial administration, because of the presence of a concurrent state proceeding. The Supreme Court was careful to point out that this category of cases did not create a new, fourth type of abstention, but instead would arise in considerably more limited, "exceptional" circumstances than those appropriate for abstention. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47. In fact, in both *Colorado River* and *Moses H. Cone,* the Court stressed the virtually unavoidable responsibility of a federal court to exercise its jurisdiction when proper.

■ In determining whether a case falls into the "exceptional circumstances" category shaped by *Colorado River* and *Moses H. Cone,* a federal district court may properly take into consideration a variety of factors:

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts ... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a careful considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. *Only the clearest of justifications will warrant dismissal. Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 937, 74 L.Ed.2d 765, 780 (1983), *quoting Colorado River,* 424 U.S. at 818–819, 96 S.Ct. at 1246–47 (emphasis added, citations omitted in *Moses H. Cone* ).

In *Moses H. Cone,* the Court also suggested that, when faced with the problem of concurrent state and federal jurisdiction, a federal district court may properly consider the fact that federal law provides the rule of decision for the merits of the particular

case. *Moses H. Cone,* 460 U.S. 1, 23, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 784. Overriding any consideration of these factors is the caveat that, in such cases, a district court's task is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; "rather the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications', that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone,* 460 U.S. 1, 25, 103 S.Ct. 927, 942, 74 L.Ed.2d 765, 786 (emphasis in original).

After considering the factors outlined by the Court in *Colorado River* and in *Moses H. Cone,* I have concluded that "exceptional circumstances" do not exist in the present case. It is true that the Court of Common Pleas of Montgomery County first exercised jurisdiction over the dispute which exists between these parties. That factor alone, however, would not justify my granting judgment in favor of Merrill Lynch due to the existence of concurrent state proceedings. In fact, the other considerations denominated by the Court in *Colorado River* and in *Moses H. Cone,* when evaluated in the context of the case brought by Roodveldt, militate in favor of my exercising jurisdiction over the subject matter of Roodveldt's claims.

It is true that the Court of Common Pleas has exercised jurisdiction over some property involved in this case. Judge Subers ordered that an escrow account be established, into which proceeds from Roodveldt's transactions with former Merrill Lynch clients will be placed. However, the cases which hold that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts are cases in which a court has acted *in rem* or *quasi in rem* to secure jurisdiction. *See, e.g., Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); *Princess Lida v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); *United States v. Bank of New York Co.,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936). The action brought by Merrill Lynch in the Court of Common Pleas is not

such an action. Moreover, I do not find that the establishment of the escrow account by Judge Subers creates an analogous instance to cases where one court has initially proceeded *in rem* or *quasi in rem,* and a concurrent action is brought in another forum. Roodveldt's case before me does not require this court to obtain possession of any property that is the subject of the suit in order to fashion appropriate relief. In *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935), the Court stated, "[w]here the judgment sought is strictly *in personam,* ... for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation ..." *Id.,* 294 U.S. at 195, 55 S.Ct. at 389.

After considering the other factors discussed by the Court in *Moses H. Cone* and *Colorado River,* I am persuaded that it is necessary to exercise jurisdiction over the case brought by Roodveldt. Roodveldt's complaint states that federal subject matter jurisdiction is premised on diversity of citizenship, but that the action is brought under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* Thus, the source-of-law in the present action is federal law. As the Court stated in *Moses H. Cone,* the "Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and that cases brought under the Arbitration Act involve important federal issues. *Moses H. Cone,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785. Furthermore, there has been no showing that in the present case, the federal forum would be inconvenient for the parties, or would create the undesirable prospect of piecemeal litigation. *See Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246–47.

As the foregoing discussion demonstrates, Merrill Lynch has not made out the "clearest justifications" for me to decline to exercise jurisdiction over Roodveldt's actions. The mandate of *Colorado River* and

*Moses H. Cone* requires a federal court to tread carefully when it is asked to abdicate the responsibility to adjudicate claims that are properly before it. After reviewing the factors that must be considered in such situations, as enunciated in *Colorado River* and in *Moses H. Cone*, it is apparent that no exceptional circumstances exist here warranting the dismissal of this federal suit due to the presence of concurrent state proceedings in the Court of Common Pleas of Montgomery County. As such, Merrill Lynch's motion to dismiss, which has been treated as a motion for summary judgment, will be denied.

**B. *Roodveldt's Motion for Injunctive Relief***

Roodveldt seeks to enjoin Merrill Lynch from "enforcing ... any order or decree of any court which is related in any way to her conduct as a former employee of defendant, Merrill Lynch." Such injunctive relief would include the order issued by the Court of Common Pleas of Montgomery County, or any other court. Further, Roodveldt seeks an order directing the parties to submit their dispute to arbitration, in accordance with the terms of the Trainee Agreement.

I begin by examining the validity under the Arbitration Act of Roodveldt's cause of action. The Arbitration Act is the statutory enunciation of strong federal policy favoring arbitration as a means of dispute resolution. *See Moses H. Cone*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Nevertheless, when faced with a claim brought under the Arbitration Act, a court must determine whether the dispute between the parties falls within the Act's prerequisites.

 The first inquiry is whether the Trainee Agreement is a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Interstate commerce is a necessary basis for application of the Arbitration Act, and a contract or agreement not predicated upon interstate commerce must be governed by state arbitration law.

*Pawgan v. Silverstein*, 265 F.Supp. 898, 901 (S.D.N.Y.1967). Federal courts have consistently held that the contract between a New York Stock Exchange brokerage firm and its employee is a contract involving interstate commerce governed by the Arbitration Act. *See Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 106 (N.D.Ill.1980) (citations omitted), *aff'd*, 653 F.2d 310 (7th Cir.1981). I agree, and find that Roodveldt's Trainee Agreement is an agreement involving interstate commerce, and falls within the scope of the Arbitration Act.

Sections 3 and 4 of the Arbitration Act, the provisions upon which Roodveldt relies in this case, require that a court, before considering a claim for relief under the Act, find that a written agreement to arbitrate was made between the parties.[6] Again, Roodveldt easily meets this prerequisite. Paragraph 5 of the Trainee Agreement represents an unequivocal written agreement to arbitrate disputes, at the request of either party. Finally, Section 4 of the Act provides that specific performance of an arbitration agreement may be ordered without a jury trial, where the "making of the agreement or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Here, it is apparent that Merrill Lynch has not complied with the Trainee Agreement's arbitration clause. For the foregoing reasons, Roodveldt may proceed with this action under the Arbitration Act.

 I now turn to the merits of Roodveldt's case. At first, I note that Roodveldt pursues specific performance of the Trainee Agreement's arbitration clause as well as equitable relief against the state court suit which is now on appeal to the Superior Court of Pennsylvania. Roodveldt's motion for injunctive relief, then, brings into question the propriety of this court issuing an order that will have the effect of restraining otherwise valid Pennsylvania state court proceedings. Roodveldt's action must therefore overcome the strictures of the anti-injunction statute, 28

**6.** *See* footnote 5, *supra.*

U.S.C. § 2283.[7] The anti-injunction statute states that "[a] court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.*

However, before considering Roodveldt's motion for injunctive relief against the state court proceeding, I must initially analyze whether specific performance of the arbitration agreement is warranted. In a similar context, the Eleventh Circuit recently had occasion to consider the relationship between the Arbitration Act and the anti-injunction statute. *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176 (11th Cir. 1981). In *Ultracashmere,* the federal court plaintiff had sought a stay of a state court proceeding, and an arbitration order pursuant to the Arbitration Act. Judge Kravitch, writing for the court, concluded that where a plaintiff seeks an arbitration order in addition to a stay of a state court action, the district court must first adjudicate the propriety of issuing the arbitration order before determining whether injunctive relief is appropriate. "[T]he latter is but an adjunct of, and can be issued only to effectuate, the former, regardless of the order in which they are sought." *Id.* at 1183 n. 13 (citations omitted).

■ Section 4 of the Arbitration Act provides that once a court finds that a controversy is subject to a written agreement to arbitrate, "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). In this case there is such a provision, embodied in paragraph 5 of the Trainee Agreement. When presented with a written arbitration agreement, and a mo-

tion for an arbitration order under Section 4 of the Arbitration Act, a federal court must initially evaluate whether the arbitration clause arguably covers the dispute at hand. *McAllister Bros. v. A & S Transportation Co.,* 621 F.2d 519, 522 (2d Cir. 1980); *Aberthaw Construction Co. v. Centre County Hospital,* 366 F.Supp. 513, 515 (M.D.Pa.1973), *aff'd,* 503 F.2d 1398 (3d Cir. 1973). In determining whether the dispute between Roodveldt and Merrill Lynch is arbitrable under the Trainee Agreement, I am guided by the principle that "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." *Moses H. Cone,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785; *see Becker Autoradio U.S.A. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 43–45 (3d Cir.1978).

■ The arbitration provision contained in the Trainee Agreement is straightforward and unambiguous. It states that *"any* controversy between [Roodveldt] and Merrill Lynch arising out of [her] employment, or the termination of [her] employment ... *for any reason whatsoever* shall be settled by arbitration at the request of either party." (Emphasis added). This broad language, coupled with a strong federal policy in favor of arbitration as an informal means of dispute resolution, leads me to conclude that the dispute between Roodveldt and Merrill Lynch falls within the scope of the parties' written arbitration agreement.

Furthermore, Judge Subers' latest opinion in this matter, entitled Adjudication, explicitly comprehends arbitration as the proper means of resolving the controversy arising out of Roodveldt's departure from

---

7. By the language of her complaint, Roodveldt seeks to enjoin Merrill Lynch from enforcing any court orders related to Roodveldt's conduct as an employee of Merrill Lynch. This injunctive relief would have the practical effect of enjoining the state court proceedings. The precedent is quite clear that the anti-injunction statute cannot be avoided by an action which seeks an order addressed to the parties in the suit, rather than to the state court itself. *Hilli-*

*ard v. Commonwealth of Pennsylvania,* 438 F.2d 92, 93 (3d Cir.1971). Likewise, an injunction issued by a federal court will violate the anti-injunction statute if the injunction prevents litigants in a state court proceeding from prosecuting or going forward with the state court proceedings, unless an exception to 28 U.S.C. § 2283 is met. *Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co.,* 328 F.2d 791, 793 (3d Cir.1964).

Merrill Lynch.[8] *Merrill Lynch Pierce Fenner & Smith v. Stephany Roodveldt*, No. 83–09272, slip op. at 5, (Ct.C.P., Montgomery County July 7, 1983). Judge Subers granted Merrill Lynch injunctive relief, finding such relief "the only means available to Merrill Lynch to maintain the status quo pending an opportunity to arbitrate the dispute upon the merits." *Id.* However, Judge Subers neither ordered the parties to arbitrate their dispute, nor explicitly denied Roodveldt's petition for a stay pending arbitration. 'I am now faced with the explicit mandate of the Arbitration Act, Section 4, to order arbitration where I find the parties have executed a written arbitration agreement that covers their dispute. An arbitration order issued here will not interfere with or restrain the state court proceedings. Judge Subers' injunction against Roodveldt, and the accompanying escrow account, will remain in effect pending the arbitration.

Finally, I note that as a member of the federal judiciary, I am bound to act consistently with the federal policy, often reiterated by the Supreme Court, favoring the arbitral process. *Moses H. Cone*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983); *see also*, the *Steelworkers* "trilogy", *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In the instant case, Roodveldt and Merrill Lynch bargained and gave consideration for the arbitration clause contained in the Trainee Agreement. Whatever may be the merits of Roodveldt's underlying dispute with Merrill Lynch, I am compelled to give effect to that agreement, and to provide Roodveldt with the

benefit of her bargain. Furthermore, the facts of this particular case persuade me that an arbitration order is warranted. On June 22, 1983, Roodveldt received notice of Merrill Lynch's state court suit against her. She sent a timely demand for arbitration to the New York Stock Exchange that same day, in accordance with the terms of the Trainee Agreement. Nevertheless, Roodveldt was bound to defend Merrill Lynch's action against her in the Court of Common Pleas of Montgomery County. Being a Pennsylvania citizen, she was unable to remove the state court proceeding to a federal forum. *See* 28 U.S.C. § 1441(b). Roodveldt did defend the state court proceeding. Twice, during the temporary restraining order hearing and during the preliminary injunction hearing, she moved to stay Merrill Lynch's Court of Common Pleas action pending arbitration. After those unsuccessful attempts, she filed this diversity action in federal court pursuant to the Arbitration Act.

Thus, this is not a case in which Roodveldt has been dilatory in seeking arbitration, or has failed to remove the action to federal court to pursue her rights under the Arbitration Act. *Cf. Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176 (11th Cir.1983) (district court refusal to enjoin state court proceeding pending arbitration affirmed due to plaintiff's failure to remove and delay in seeking arbitration). In sum, from the outset of this dispute, Roodveldt has manifested her desire to enforce the arbitration clause of the Trainee Agreement. For these reasons, Roodveldt's motion for injunctive relief will be granted insofar as it seeks an order directing the parties to arbitration in accordance with the terms of the Trainee Agreement.

Having determined that an arbitration order is warranted in this instance, I now evaluate Roodveldt's motion for a stay of the Pennsylvania state court proceedings.[9]

**8.** Judge Subers prepared the Adjudication on November 9, 1983, but it is dated as of July 7, 1983. On that date the state court injunction hearing was concluded, and preliminary injunctive relief was granted.

**9.** Quite recently, the Supreme Court expressly reserved decision on the very issue presented by Roodveldt, namely, whether a federal court, when presented with a case under the Arbitration Act, might stay a state court proceeding pending arbitration. *See Moses H. Cone Hospi-*

At first, it is clear that if an injunction is to issue against the state court proceeding, I must determine whether Roodveldt's cause of action implicates one of the three stated exceptions to the anti-injunction statute.[10] In similar circumstances, federal courts have held that a state court proceeding may be enjoined by a federal court following the issuance of an arbitration order pursuant to the Arbitration Act. These courts view equitable relief as justified due to a federal court's authority, under the anti-injunction statute, to stay proceedings in a state court "to protect or effectuate the [federal court's] judgments." 28 U.S.C. § 2283. *Blount Brothers Corp. v. M.K. Steel, Inc.*, 524 F.Supp. 1037, 1039 (N.D.Ala.1981) (citations omitted). In such cases, the federal courts conclude that the arbitration order, and the consequent expeditious resolution of the underlying dispute, would be nullified unless the federal court stayed the state court proceedings. *Id.*

▮▮▮▮ Of course, assuming that the Arbitration Act may provide an exception to the anti-injunction statute does not mandate that Roodveldt's motion for injunctive relief be granted. In the interests of comity and federalism, the three exceptions to the anti-injunction statute must be strictly construed. " '[D]oubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.' " *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (plurality opinion), *quoting Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970). This is so even though the strict abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) may not be applicable to state civil proceedings between private litigants.[11] *See Johnson v. Kelly*, 583 F.2d 1242, 1249–1250 (3d Cir.1978). Judge Wisdom, writing for the Fifth Circuit in the case of *Southern California Petroleum Corp. v. Harper*, 273 F.2d 715 (5th Cir. 1960), explained the nature of the anti-injunction statute:

> Section 2283 is essentially a rule of comity, and the demand ... that a federal court interfere with state court proceedings is directed to the discretion of the federal court. This discretion should be exercised in light of the historical reluctance of federal courts to interfere with state judicial proceedings.

*Id.* at 718. *See also Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263 (7th Cir.1976) (no abuse of discretion in district court refusal to enjoin state proceeding after entering arbitration order pursuant to Arbitration Act). That is, Section 2283 evidences confidence in state courts, "reinforced by a desire to avoid direct conflicts between state and federal

---

*tal v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765, 786 n. 32 (1983). In that case, the Court found that there was no need to address the question, given the procedural posture of the *Moses H. Cone* litigation. However, a recent opinion of the Supreme Court confirms that both state and federal courts must give effect to the Arbitration Act. *Southland Corp. v. Keating*, —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

**10.** 28 U.S.C. § 2283, quoted *supra*, at 780.

**11.** It should be noted that the analysis under the anti-injunction statute is distinct from the doctrine established by *Moses H. Cone* and *Colorado River*. In those cases, the Court evaluated whether a federal court should ever stay or dismiss a case due to the existence of concur-

rent state proceedings. I explained in section A of this Opinion the important reasons why a federal court should adjudicate controversies that are properly before it. Hence, rarely should a federal court refuse to adjudicate an action due to concurrent state proceedings. As is apparent from the above discussion, the same analysis does not apply when a federal court is asked to interfere with or to enjoin the state court proceedings. In such instances, principles of comity and federalism actually weigh against interference with the state court system. For these reasons, no injunction ought to issue which restrains or interferes with state court proceedings, unless it is shown that great and irreparable injury might occur if injunctive relief is not afforded. *See Moore v. Sims*, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979).

courts." *Amalgamated Clothing Workers of America v. Richman Bros.,* 348 U.S. 511, 518, 75 S.Ct. 452, 457, 99 L.Ed. 249 (1955).

■ With these principles in mind, I turn to Roodveldt's motion for injunctive relief. The anti-injunction statute provides, *inter alia,* that a United States court is empowered to stay proceedings in a state court "to protect or effectuate the United States court's judgments." 28 U.S.C. § 2283. This power has sometimes been described as the "relitigation exception". 1A Moore's Federal Practice 110.208(a)[3]; *see United States v. Ford Motor Company,* 522 F.2d 962, 966 (6th Cir.1975). That is, a federal court may in its discretion enjoin state proceedings where the result of relitigation in state court would eviscerate the effect of the federal court's order, or would render doubtful the rights of the parties with respect to the federal adjudication.

■ I have previously determined that Merrill Lynch and Roodveldt shall be ordered to arbitrate their dispute, in accordance with the terms of the Trainee Agreement. In this case, there is little danger that the Pennsylvania state court litigation will unduly affect an arbitration order entered by this court. Among the issues Roodveldt has appealed to the Superior Court of Pennsylvania is Judge Subers' alleged "refusal ... to stay proceedings pending arbitration or, in the alternative, pending determination of a motion to compel arbitration ..." *Merrill Lynch Pierce Fenner & Smith v. Stephany Roodveldt,* No. 83–09272 (Ct.C.P., Montgomery County July 14, 1983) (statement of matters complained of in appeal). If the Superior Court determines that Judge Subers erred in refusing to stay proceedings pending arbitration, the arbitration order I have directed to the parties will remain unaffected. Merrill Lynch and Roodveldt will continue to be obligated to arbitrate by order of this court, and will do so under the terms of the Trainee Agreement. Conversely, if Judge Subers' adjudication of Merrill Lynch's state court suit is upheld by the Superior

Court of Pennsylvania, the parties will still be bound to arbitrate in accordance with my order. Finally, even if the Pennsylvania state courts ultimately give effect to the arbitration clause in the Trainee Agreement, and order arbitration, the resulting state court arbitration order will merely provide the same remedy as I have provided. *Cf. Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263 (7th Cir. 1976) (no abuse of discretion in district court refusal to stay state court proceedings after entering arbitration order where state court proceeding could not affect obligation of parties to arbitrate under arbitration order). Therefore, I find that it is unlikely that further litigation of the state court action involving Roodveldt and Merrill Lynch may endanger the arbitration order I will issue in this case.

Moreover, as is the case with any exception to the anti-injunction statute, a party must demonstrate sufficient need to be entitled to relief under the relitigation doctrine. That is, there are no "automatic" exceptions to Section 2283. Indeed, the existence of an exception to the anti-injunction statute does not "question or qualify in any way the principles of equity, comity and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972).

In the instant case, Roodveldt seeks equitable relief, arguing that such relief is necessary to "protect or effectuate" the arbitration order. *See* 28 U.S.C. § 2283. The standards for granting injunctive relief have been often articulated. As was stated in *Philadelphia Welfare Rights Org'n v. O'Bannon,* 525 F.Supp. 1055 (E.D.Pa.1981):

A district court deciding whether a permanent injunction should be issued must undertake a three stage inquiry. First, the court must decide whether plaintiffs have actually succeeded on the merits of their claim. Second, the court must decide whether the "balance of equities" favors the granting of injunctive relief. Finally, the court needs to decide what

form the injunctive remedy should take... Particularly when "balancing the equities," the trial judge should exercise his discretion in determining the propriety of injunctive relief. Among the factors traditionally considered in this balance are: the adequacy of another remedy; the benefit to the plaintiff if injunctive relief is granted and hardship if such relief is denied; the hardship on the defendant if injunctive relief is granted; the hardship on third parties; the convenience and effectiveness of administration; and the public and social consequences of either granting or denying injunctive relief.

*Id.* at 1057–1058 (citations omitted). As I have determined that an arbitration order shall be issued in this case, Roodveldt has "succeeded on the merits of [her] claim." *See id.* at 1057. However, after considering the "balance of the equities", I have concluded that Roodveldt is not entitled to an injunction directed against the state court proceedings. In fact, I find that Roodveldt's rights have been adequately protected by the action taken by Judge Subers of the Court of Common Pleas of Montgomery County. The record reveals that Judge Subers proceeded carefully and thoughtfully, and considered all relevant facts and precedent in making his determination. I also note that Judge Subers, by establishing the escrow account, protected Roodveldt from possible pecuniary loss, if it is later found through arbitration that Roodveldt did not violate the terms of the Trainee Agreement.[12] Moreover, I have provided Roodveldt with the benefit of her bargain with Merrill Lynch, by my decision to order the parties to arbitrate in accordance with the terms of the Trainee Agreement. I also note that the granting of injunctive relief here may harm Merrill Lynch's ability to enforce otherwise valid

Trainee Agreements in the future, should similar disputes arise. Accordingly, I find that the dual remedy provided by Judge Subers' establishment of the escrow account and my arbitration order is more than adequate to protect Roodveldt from whatever financial hardship she may suffer as a result of the state court injunction.

My decision to deny Roodveldt's motion for relief rests upon my discretion as a member of the federal judiciary, when presented with a motion to enjoin state court proceedings. I cannot find that great and irreparable injury will befall Roodveldt if I fail to take action against the injunction issued against her by Judge Subers. Therefore, principles of comity and federalism require that I refrain from interfering in the pending state court case at this time.

## IV. CONCLUSION

For the foregoing reasons, Merrill Lynch's motion to dismiss will be denied. Roodveldt's motion for injunctive relief will be granted in part and denied in part, and an appropriate Order will be entered.

## ORDER

AND NOW, this 6 day of February, 1984, upon consideration of Merrill Lynch Pierce Fenner & Smith's motion to dismiss, all responses thereto, Stephany Roodveldt's motion for injunctive relief, and all responses thereto, IT IS HEREBY ORDERED that:

1. Merrill Lynch Pierce Fenner & Smith's motion to dismiss is DENIED.

2. Stephany Roodveldt's motion for injunctive relief is GRANTED insofar as it seeks an order directing the parties to arbitrate their dispute.

3. Merrill Lynch Pierce Fenner & Smith and Stephany Roodveldt are ORDERED to submit to arbitration any disputes arising

---

12. Judge Subers applied New York law, in accordance with the terms of the Trainee Agreement, in finding that an injunction against Roodveldt was necessary to preserve the status quo. Under the Arbitration Act, federal law controls the enforceability of the arbitration agreement. *See Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1270 (7th Cir.

1976). Nevertheless, a status quo injunction pending arbitration is recognized under both New York law and the Federal Arbitration Act. *Guinness-Harp Corporation v. Joseph Schlitz Brewing Company,* 613 F.2d 468 (2d Cir.1980). I find that the issuance of the status quo injunction by Judge Subers was warranted on the facts of this case.

out of the termination of Stephany Roodveldt's employment at Merrill Lynch Pierce Fenner & Smith. Such arbitration shall take place in accordance with the terms of paragraph 5 of the Account Executive Trainee Agreement executed by the parties on or about July 20, 1978. Stephany Roodveldt is ORDERED to request such arbitration within 14 days from the date of this ORDER.

4. Stephany Roodveldt's motion for injunctive relief is DENIED insofar as it seeks the issuance of equitable relief against Merrill Lynch Pierce Fenner & Smith, enjoining Merrill Lynch Pierce Fenner & Smith from enforcing or seeking to enforce any order issued by the Court of Common Pleas of Montgomery County, Pennsylvania, in the matter of *Merrill Lynch Pierce Fenner & Smith,* No. 83–09272, and insofar as it seeks equitable relief against Merrill Lynch Pierce Fenner & Smith, enjoining Merrill Lynch Pierce Fenner & Smith from prosecuting, enforcing and seeking to enforce any order or decree of any court which is related to Stephany Roodveldt's conduct as a former employee of Merrill Lynch Pierce Fenner & Smith.

5. The Clerk of the Court is ORDERED to close the docket of the within case.