Jessica RATH and Robert Rath

v.

Johnny CASEY and Carolina Transportation

No. CIV.A. 02–CV–55.

United States District Court, E.D. Pennsylvania.

Feb. 27, 2004.

---

Allen L. Feingold, A.L. Feingold Associates, Philadelphia, PA, for Plaintiffs.

Matthew T. Pisano, Segal McCambridge Singer & Mahoney, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil, personal injury action is now before the Court on Motion of the Defendants to Enforce the Arbitration Award pursuant to Local Rule of Civil Procedure 53.2(6). For the reasons set forth below, the motion is granted.

### Factual Background

This case arose out of an accident which occurred on December 21, 1999 in Downingtown, Pennsylvania. On that date, Defendant Johnny Casey, a South Carolina resident, was operating a tractor trailer owned by his employer, Carolina Transportation, when he struck the right front quarter panel of the plaintiff's Jeep Cherokee while executing a left hand turn. As a result of this accident, the plaintiff suffered injuries for which she sought redress through the filing of this lawsuit in the Philadelphia County Court of Common Pleas in December, 2001. Defendants thereafter removed the case to this Court on January 4, 2002.

Following a protracted period of discovery, in September, 2003, the parties agreed to submit the case to a binding "high-low" arbitration[1] before Judge Naythons of ADR Options, Inc. The arbitration was conducted on December 2, 2003 and Judge Naythons issued his decision and award in favor of the plaintiff and against the defendants in the amount of $14,400 on December 9, 2003. When Defendants' counsel contacted Plaintiffs' counsel on December 11, 2003 to make arrangements for the exchange of the draft, general release and IRS Form W–9, Plaintiffs' counsel advised him that he was not interested in resolving the matter for the amount awarded by the arbitrator and would not be providing the release or Form W–9. On January 12, 2004, Defendants filed this motion to enforce the arbitration award.

### Discussion

As a threshold matter to adjudicating the enforceability of the arbitration award at issue, we must first ascertain the appropriate law to apply. Although Defendants move to enforce the arbitration award pursuant to Local Rule of Civil Procedure 53.2.(6.), that Rule applies to compulsory arbitration cases filed in this Court after September 13, 1999 in which the amount of damages sought was not in excess of $150,000, exclusive of interest and costs. As the parties in this case entered into an agreement to arbitrate on December 2, 2003,[2] the arbitration in this matter is one at common law and Local Rule of Civil Procedure 53.2.(6.) therefore has no application in this case.

Arbitration, of course, is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648–649, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). It therefore follows that the question of arbitrability is an issue for judicial

---

1. Pursuant thereto, the parties agreed that the plaintiffs would receive no less than $15,000 and no more than $65,000 for their case.

2. It appears that the parties entered into an oral agreement to arbitrate this case before Judge Naythons of ADR Options, Inc. in August, 2003 and that the defendants' attorney signed the written "Arbitration Agreement and Stipulation" on August 21, 2003. Since Plaintiff's counsel did not execute the written agreement until December 2, 2003, the date on which the arbitration was conducted, we have deemed the written agreement as having been formally executed on that latter date.

determination and thus unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the Court. *Id.* As a general rule, agreements to arbitrate are generously construed. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, n. 7, 115 S.Ct. 1212, 1218, n. 7, 131 L.Ed.2d 76 (1995), citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985).

▉▉▉ For the arbitration agreement at issue here to be governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*,[3] it must be found to be a contract evidencing a transaction in interstate commerce. *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108–109 (3d Cir.1984). Such a finding is a factual determination to be made by the district court. *Id.* Given that no evidence whatsoever on this issue has been provided to the court, we cannot specifically find that the Federal Arbitration Act governs the disposition of this case. Nevertheless, it appears that whether federal or state law is applied here makes no difference in reaching the substantive result because there is no meaningful difference between federal and Pennsylvania state law when reviewing the scope of an arbitration agreement. *State Farm Mutual Automobile Insurance Co. v. Coviello*, 233 F.3d 710, 713, n. 1 (3d Cir.2000); *Goodwin v. Elkins*, 730 F.2d at 109.[4]

▉▉▉ As enunciated by the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*, there is a strong federal policy favoring arbitration requiring that the courts rigorously enforce agreements to arbitrate. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith*, 585 F.Supp. 770, 779 (E.D.Pa.1984). Under the FAA, the district court must first satisfy itself that there is a valid agreement to arbitrate keeping in mind that there is a strong presumption in favor of arbitration and that all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Great Western Mortgage Corp. v. Peacock*, 110

---

**3.** The FAA provides, in pertinent part:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. Under 9 U.S.C. § 1, "maritime transactions" as herein defined means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce" as herein defined means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between the District of Columbia and any State or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

**4.** Indeed, 42 Pa.C.S. § 7303 is virtually identical to 9 U.S.C. § 2 in that it provides:

"a written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." *See Also*, 42 Pa.C.S. § 7342(a).

F.3d 222, 228 (3d Cir.1997). *See Also, Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

█ Similarly, Pennsylvania law is well established that a party against whom arbitration is sought under an alleged agreement to arbitrate has a right to a judicial determination of (1) whether the parties entered into an agreement to arbitrate and (2) whether the dispute at issue falls under the agreement. *Allstate Insurance Company v. Gammon,* 838 F.2d 73, 76 (3d Cir.1988), citing *Lincoln University v. Lincoln University Chapter of the Association of University Professors,* 467 Pa. 112, 119, 354 A.2d 576, 580 (1976) and *Independence Development, Inc. v. American Arbitration,* 460 Pa. 390, 392, 333 A.2d 781, 782–83 (1975). The Pennsylvania courts have also held that an agreement to arbitrate is to be strictly construed, and not to be extended by implication beyond its terms. *Id.,* citing *Emmaus Municipal Authority v. Eltz,* 416 Pa. 123, 125, 204 A.2d 926, 927 (1964) and *Cumberland–Perry v. Bogar and Bink,* 261 Pa.Super. 350, 353, 396 A.2d 433, 434–35 (1978).

█ In this case, the evidence is clear that both parties readily agreed to submit this case to binding arbitration before Judge Naythons of ADR Options, Inc. Indeed, as is clear from the correspondence annexed as Exhibits "A," "C," and "D" and the Arbitration Agreement and Stipulation annexed as Exhibit "B" to the instant motion, the parties entered this agreement in mid-August, 2003, notwithstanding that Plaintiffs' counsel did not execute the written agreement until the day the arbitration took place. Specifically, the written "Arbitration Agreement and Stipulation" executed by the parties' attorneys provided in relevant part:

## ARBITRATION AGREEMENT AND STIPULATION

Jessica Rath v. Carolina Transportation

It is hereby stipulated by and between the parties that the above case is to be decided by a binding arbitration. The undersigned parties also agree that the arbitration will be final, binding and conducted under the current ADR OPTIONS, INC. Rules of Procedure which are enclosed. This agreement to arbitrate is an agreement for common law arbitration unless the parties expressly agree in writing for arbitration pursuant to the Uniform Arbitration Act, a similar statute or other contractual term(s).

We therefore find that the plaintiffs and defendants entered into a valid agreement to arbitrate and that this case falls within the confines of that agreement.

█ We thus turn next to the issue of whether the arbitration award should be enforced and in so doing are again guided by both the Federal and Pennsylvania Arbitration Acts. In this regard, § 9 of the FAA provides, in relevant part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made, any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the adjudication shall be served upon the adverse party, and thereupon the

court shall have jurisdiction of such party as though he had appeared generally in the proceeding...

Under § 10(a),

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-

(1) Where the award was procured by corruption, fraud or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

The applicable Pennsylvania statutes are similar. Under 42 Pa.C.S. § 7302(a),

"[a]n agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter."

Further,

"The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award."

42 Pa.C.S. § 7341.

Finally, under 42 Pa.C.S. § 7342(b),

"On application of a party made more than 30 days after an award is made by an arbitration under section 7341 (relating to common law arbitration) the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order..."

The gravamen of Plaintiffs' opposition to the defendants' Motion to Enforce Arbitration Award is found on page 2 of their Memorandum of Law:

"Defendants violated the conditions of the submission of this matter to arbitration, as well as plaintiff's discovery requests, the Court's Orders and directives, as well as improperly providing records and information to the party that was to hear the arbitration.....During the arbitration hearing and before same, the defendant made statements that were unsupported by the evidence or records or submitted information improperly, in violation of the rules of evidence or the rules of arbitration which gave the arbitrator hearing the matter inappropriate and improper information on both liability and damages which severely injured the plaintiff's claims and obtaining an award less than the low

figure agreed upon by all concerned as the minimum value of this case and over $60,000.00 less than the $75,000.000 that defendant said the case was worth when he certified same and removed it to Federal Court.... In addition, when defense counsel and the arbitrator failed to apprise plaintiff's counsel before the arbitration started regarding their prior relationship on various and many other matters, one of which seemed to have been recently completed and one of which was still ongoing is again, itself more than enough reason to strike and set aside the arbitration award as being a total breach of the obligations between the parties and the basis for this matter proceeding to arbitration."

It thus appears that the bases for Plaintiffs' refusal to abide by the arbitrator's award arise from the manner in which the arbitration proceeding was conducted, (*i.e.* the arguments advanced by counsel and the evidence offered by the defendants and admitted into evidence by the arbitrator) and the fact that Defendants' counsel apparently had had other cases on which Judge Naythons sat as arbitrator. Even putting aside the fact that the plaintiffs have produced no evidence whatsoever to support their contentions, their asserted grounds for relief from the award do not in this Court's opinion rise to the level of misconduct, corruption, fraud, undue means or improper partiality to justify setting aside Judge Naythons' decision. We therefore shall order that the arbitration award be confirmed in accordance with the attached order.

### ORDER

AND NOW, this 27th day of February, 2004, upon consideration of Defendants' Motion to Enforce the Arbitration Award entered by Judge Naythons of ADR Options, Inc. on December 9, 2003 and Plaintiffs' Response thereto, it is hereby OR-DERED that the Motion is GRANTED as follows:

1.  Judgment in the amount of $15,000 is hereby entered in favor of the plaintiffs and against the defendants.

2.  Within thirty (30) days of the date of this Order, Plaintiffs shall submit executed General Releases and IRS Form W–9 to Defendants' counsel.

3.  Within thirty (30) days of receipt of the aforesaid General Releases and IRS Form W–9, Defendants shall tender the sum of $15,000 to Plaintiffs and their attorney.